IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ABERCROMBIE & FITCH CO.,
    Plaintiff,

v.

                                          Case No. 2:06-CV-831
                                          JUDGE EDMUND A. SARGUS, JR.
                                          Magistrate Judge Terence P. Kemp

FEDERAL INSURANCE CO.,
    Defendant/ Third Party Plaintiff,

v.

NATIONAL UNION FIRE INSURANCE
CO. OF PITTSBURGH, PA.,
    Third Party Defendant.

## OPINION AND ORDER

This matter is before the Court for consideration of the Third Party Defendant's Motion to Dismiss. (Doc. #21). For the reasons that follow, the motion is denied.

### I.

Plaintiff Abercrombie & Fitch Co., ["Abercrombie"], a Delaware corporation with its principal place of business in New Albany, Ohio, brings this action seeking declaratory judgment and damages in connection with the alleged breach of an insurance contract providing directors and officers liability coverage. The Defendant is Federal Insurance Company ["Federal"], an Indiana corporation with its principal place of business in Warren, New Jersey. The amount in controversy exceeds $75,000. The Court has jurisdiction based on diversity of citizenship. 28 U.S.C. § 1332.

On September 2, 2005, several lawsuits were commenced against Abercrombie and certain of its officers and directors alleging securities violations and shareholder derivative claims. The cases were consolidated and are pending before the undersigned under the lead case, *Ross v. Abercrombie & Fitch Co.*, 2:05-CV-819. As a result of these lawsuits, Abercrombie filed the instant action against Defendant, the issuer of an insurance policy providing directors and officers liability coverage[1]. In its Amended Complaint, Abercrombie states:

> In return of substantial premiums, Federal sold to Abercrombie Policy No. 8159-62-13, providing directors and officers liability coverage for, among other things, securities and shareholder derivative claims against Abercrombie and the individual insureds, including Abercrombie's directors and officers, arising out of wrongful acts allegedly committed by Abercrombie and the individual insureds, including Abercrombie's directors and officers, for the period from September 1, 2004 to September 1, 2005. . . .

(*Am. Complaint* at ¶ 7). The Court refers to this policy as the "2004 Federal Policy."

The 2004 Federal Policy contains an "Other Insurance" provision which states, in part:

> If any Loss under this coverage section is insured under any other valid insurance policy (ies), then this coverage section shall cover such Loss, subject to its limitations, conditions, provisions and other terms, only to the extent that the amount of such Loss is in excess of the applicable retention (or deductible) and limit of liability under such other insurance, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over Limits of Liability provided in this coverage section. . . .

(2004 Federal Policy, ¶ 18, *Motion to Dismiss*, Exhibit 2).

On September 30. 2005, Abercrombie purchased an Extended Reporting Period ["ERP"] and paid an additional premium to extend coverage under the policy to September 1, 2006.

The ERP provision of the 2004 Federal Policy states:

---

[1] The aggregate policy limit is ten million dollars. The policy is a "claims made" policy, meaning that it is triggered by claims made against insureds during the policy period.

2

> If the Company or the **Parent Organization** [Abercrombie] terminates or does not renew this coverage section, other than termination by the Company for nonpayment of premium, the **Parent Organization** and the **Insured Persons** shall have the right, upon payment of the additional premium set forth in Item 6(B) of the Declarations for this coverage section, to an extension of the coverage granted by this coverage section for **Claims** that are (i) first made during the period set forth in Item 6(A) of the Declarations for this coverage section (the "Extended Reporting Period") following the effective date of termination or nonrenewal; and (ii) reported to the Company in writing within the time provided in Subsection 15(a) of this coverage section, but only to the extent such **Claims** are for **Wrongful Acts** committed, attempted, or allegedly committed or attempted before the earlier of the effective date of termination or nonrenewal or the date of the first merger, consolidation, or acquisition event described in Subsection 21 below. The offer of renewal terms and conditions or premiums different from those in effect prior to renewal shall not constitute refusal to renew. The right to purchase an extension of coverage as described in this Subsection shall lapse unless written notice of the election to purchase the extension, together with payment of the additional premium due, is received by the Company within thirty (30) days after the effective date of termination or nonrenewal. Any **Claim** made during the Extended Reporting Period shall be deemed to have been made during the immediately preceding **Policy Period**. The entire additional premium for the Extended Reporting Period shall be deemed fully earned at the inception of such Extended Reporting Period.

(2004 Federal Policy, ¶ 12, *Motion to Dismiss*, Exhibit 2) (emphasis in original).

Abercrombie's position in this case is that coverage under the 2004 Federal Policy applies to claims for alleged wrongful acts which are the subject of the *Ross* litigation. (*Id.* at ¶ 8). Abercrombie claims that Defendant has wrongfully denied coverage under the policy by refusing to pay defense costs for the consolidated lawsuits as well as a Securities and Exchange Commission ["SEC"] investigation[2] commenced in November 2005. Plaintiff's Amended Complaint presents claims for declaratory judgment (Counts I, III, IV), breach of contract (Counts II, V), and bad faith (Count VI).

---

[2]On November 30, 2005, the SEC commenced an investigation concerning trading in shares of Abercrombie's Class A common stock. (*Am. Compl.* at ¶ 18).

In response to the original Complaint, the Defendant filed an Answer, Counterclaim and Third Party Complaint. The Defendant names National Union Fire Insurance Company of Pittsburgh, Pa.,["National Union"], as a Third-Party Defendant. The Court has jurisdiction over the Third Party Complaint based on diversity of citizenship, 28 U.S.C. § 1332, since National Union is a Pennsylvania corporation and the amount in controversy exceeds $75,000.

The Defendant alleges that, in mid-2005, Abercrombie sought a carrier to replace Federal upon expiration of the 2004 Federal Policy. (*Id.* at ¶ 16). On August 30, 2005, National Union issued a Binder of Insurance Confirmation Letter confirming "the binding of a 'D&O 2/2000 Executive and Organization Liability Policy' for Abercrombie with an effective date of September 1, 2005 and that would bear the Policy Number 004936599." (*Id.* at ¶ 17). The policy is referred to as the "2005 National Union Primary Policy."

In its Third Party Complaint, Federal alleges that after the *Ross* litigation began, National Union and Abercrombie devised a "scheme" to make the National Union policy an excess policy, thereby shifting "the entire burden of covering the *Ross* litigation and similar claims to [Defendant]." (*Id.* at ¶ 26). Federal alleges that the scheme was developed through e-mail messages from McGriff, Siebels & Williams, Inc. ["McGriff"][3] to National Union and was memorialized in the form of endorsements to the 2005 National Union Primary Policy. (*Third Party Compl.* at ¶ 35). On November 22, 2005, National Union issued Endorsements 17, 18 and 19 to the 2005 National Union Primary Policy. Endorsement No. 17 states:

> In the event a Claim is made against an Insured under the policy and also under Policy No. 8159-6213 issued by Federal Insurance Company . . . alleging any

---

[3]McGriff is an insurance brokerage firm that assisted Plaintiff in obtaining the policy from Defendant Federal.

> Wrongful Act committed or allegedly committed prior to 9/01/2005, then such insurance as is provided by this policy shall apply only as excess over any Loss paid under such Federal Policy.

(*Id.* at ¶ 37). Endorsement No. 17 also amended Clause 6 of the 2005 National Union Primary Policy providing that "[i]n the event [a] Claim [is] made against an Insured under this policy and also under the Federal Policy, alleging any Wrongful Act committed or allegedly committed prior to 9/01/2005, and the insurance as is provided by this policy shall apply as excess over . . . the Federal Policy, then the Retention amount as stated in the Declarations shall not be applicable to such Claim." (*Id.* at ¶ 38). "The amendment to Clause 6 also provided that in the event the 2005 National Union Primary Policy and the 2004 Federal Policy were found to provide coverage on a co-primary basis, the applicable retention would be lowered from $2 million to $1 million." (*Id.*).

Endorsement No. 18 provides for the automatic renewal of the 2005 National Union Primary Policy provided that no claim "'alleging any Wrongful Act committed or allegedly committed entirely after the inception date of this policy' was noticed to National Union during the 2005 National Union Primary Policy period." (*Id.* at ¶ 39). Endorsement No. 19 amends the forms index of the 2005 National Union Primary Policy to reflect the addition of Endorsements Nos. 17 and 18. (*Id.* at ¶ 40).

Federal claims that Plaintiff materially breached its obligations under Section 16 of the 2004 Federal Policy "by entering into an agreement with National Union that sought to terminate Federal's right to obtain equitable contribution from National Union for Loss associated with the Ross litigation, the SEC investigation, and any other Claims made during the period of September 1, 2005 to September 1, 2006 that are based on acts or events that occurred prior to

September 1, 2005." (*Id.* at ¶ 50). Defendant asserts claims for declaratory judgment and breach of contract against Plaintiff (Counts I, II); declaratory judgment against Third Party Defendant National Union (Count III); and equitable contribution against National Union (Count IV). National Union maintains that its policy is an excess policy to the 2004 Federal Policy and moves to dismiss the Third Party Complaint.

## II.

Federal Rule of Civil Procedure 12(b)(6) permits a Defendant, or in this case a Third-Party Defendant, by motion, to raise the defense of a Plaintiff's "failure to state a claim upon which relief can be granted." A motion to dismiss for failure to state a claim pursuant to Federal Rule 12(b)(6) "should not be granted unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 42, 45-46 (1957). The Court is authorized to grant a motion to dismiss under 12(b)(6) only where it is "clear that no relief can be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). All well-pleaded allegations must be taken as true and be construed most favorably toward the non-movant. *See Schuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Mayer v. Mylod*, 988 F.2d 635, 637 (6th Cir. 1993). While a court may not grant a Rule 12(b)(6) motion based on disbelief of a complaint's factual allegations, *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir. 1990), the court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). Consequently, a complaint will not be dismissed pursuant to Rule 12(b)(6) unless there is no law to support the claims made, the facts

6

alleged are insufficient to state a claim, or there is an insurmountable bar on the face of the complaint.

### III.

Third-Party Defendant National Union's Rule 12(b)(6) motion specifically incorporates the arguments made by Abercrombie when it filed a Motion to Dismiss[4] Defendant Federal's counterclaims. National Union's motion consists of one paragraph and contains no independent argument on behalf of National Union[5]. In its Memorandum *contra* National Union's Motion, Federal takes issue with National Union's failure to advance its own arguments in support of a motion to dismiss. According to Defendant Federal, since the Third Party Complaint is based on a theory of equitable contribution, the arguments earlier advanced by Abercrombie are not necessarily dispositive of Federal's claims against National Union. National Union initially failed to respond to this argument in its Reply memorandum and simply stated that its Reply specifically incorporated Abercrombie's Reply memorandum in support of the motion to dismiss Federal's counterclaims.

One month later, and without leave of Court, National Union filed another Reply Memorandum, this time addressing the merits of its Motion to Dismiss the Third Party Complaint. In response to this filing, Defendant Federal sought leave under S.D. Ohio Local

---

[4]This Court has denied the Plaintiff's Motion to Dismiss as moot in view of the Plaintiff's filing of an Amended Complaint.

[5]The Motion is not in compliance with S.D. Ohio Local Rule 7.2(a)(1) which states that "[a]ll motions . . . shall be accompanied by a memorandum in support thereof which shall be a brief statement of the grounds, with citation of authorities relied upon."

Rule 7.2(a)(2), to file a Surreply. The request was granted. In response to the Surreply, National Union now seeks leave to file a Sur-Surreply[6]. In the interests of resolving the merits of National Union's motion, the Court will permit the filing. National Union is, however, cautioned to adhere to this Court's Local Rules in the future. Any failure to follow the rules will result in pleadings being stricken. With these procedural matters resolved, the Court considers the arguments advanced by National Union in support of its Motion to Dismiss.

Third Party Defendant National Union raises three arguments in support of its Motion to Dismiss. First, National Union argues that there is nothing in the Federal policy that prohibited Abercrombie from endorsing the National Union policy to provide that its insurance would be excess to the Federal policy even after the *Ross* litigation began. Federal disagrees and argues that Section 16(d) of the Federal policy prohibits such action. Section 16 is entitled "Defense and Settlement." Subsection (d) states:

> The Insureds agree to provide the Company with all information, assistance and cooperation which the Company may reasonably require and agree that in the event of a Claim the Insureds will do nothing that could prejudice the Company's position or its potential or actual rights of recovery.

(Exhibit 2, *Motion to Dismiss*). In response, National Union argues that this provision has no impact upon Abercrombie's ability to make the National Union policy an excess policy. National Union contends that entering into a "post loss modification" of the policy with

---

[6]The Court notes that, in seeking leave to file the Sur-Surreply, National Union accuses Federal of attempting to secure a "tactical advantage." (Doc. #49 at 2). The Court disagrees with this characterization. It was National Union that filed a second Reply out of rule. Moreover, the untimely pleading was the first time National Union addressed the merits of its own Motion to Dismiss. In the Court's view, Defendant Federal's Surreply was not made in an attempt to gain tactical advantage but rather, to address arguments that National Union should have made in the first instance when it filed its Motion to Dismiss.

Abercrombie is permissible. National Union relies on the Sixth Circuit's decision in *GenCorp.Inc. v. Am. Int'l Underwriters*, 178 F.3d 804 (6th Cir. 1999), in support of this position.

In *GenCorp,* the insured brought a declaratory judgment action against its insurers and excess insurers seeking defense costs and indemnification for losses incurred in connection with environmental suits. As part of an earlier insurance action, GenCorp and a certain insurer, GenCo, executed a settlement agreement that included a release from all environmental claims that GenCorp may have against GenCo. In the later action in which GenCorp sought to recover costs for different environmental claims, GenCo was named as a third party defendant by an excess insurer. The excess insurers moved for summary judgment claiming that their policies followed the earlier executed Genco policy endorsements which barred recovery for pollution related claims. The district court agreed and granted summary judgment. The Sixth Circuit affirmed, noting that the express terms of coverage in the excess policies required the endorsements to the GenCorp policy to be read into the excess policies. 178 F.3d at 813.

In the Court's view, the *GenCorp* decision is not helpful to resolving the issue in this case. The Court notes that National Union does not rely on the decision for its holding but rather for the Sixth Circuit's statements regarding the effect of post loss modification to an insurance contract. The court noted that there is "no per se rule against post loss modifications" but, the court held that "the incorporation of the absolute pollution exclusion provision into the Excess Policies is not a 'modification' of the contracts between GenCorp and the Excess Insurers . . . ." *Id.* at 814. Post loss modification was not even an issue in the *GenCorp* case. Further, the Sixth Circuit stated that post loss modification ordinarily arises in the context of a single bilateral insurance contract, not in the context of a multiple insurance contracts.

9

In this case, there is more than one insurance contract at issue. National Union fails to take notice of this distinction in its argument as to how the post loss modification theory impacts Federal's claim that the actions of Abercrombie and National Union violate ¶ 16(d) of the 2004 Federal Policy.

National Union's second argument in support of the motion to dismiss is that an exception in the Federal "Other Insurance" provision confirms that the National Union policy is excess insurance. The provision states:

> If any Loss under this coverage section is insured under any other valid insurance policy(ies), then this coverage section shall cover such Loss, subject to its limitations, conditions, provisions and other terms, only to the extent that the amount of such Loss is in excess of the applicable retention (or deductible) and limit of liability under such other insurance, whether such other insurance is stated to be primary, contributory, excess, contingent, or otherwise, unless such other insurance is written only as specific excess insurance over the Limits of Liability provided in this coverage section. Any payment by Insureds of a retention or deductible under such other insurance shall reduce, by the amount of such payment which would otherwise have been covered under this coverage section, the applicable Retention under this coverage section.

(¶ 18, Exhibit 2, *Motion to Dismiss*). Federal argues that this provision does not apply because the National Union policy was specifically intended to replace the primary coverage previously provided by the Federal policy. (*Third Party Compl.* at ¶¶ 16-17).

The Court cannot conclude, at this stage, that there are no set of facts that would entitle Federal to relief on its claim. Federal claims that the National Union policy is not an excess insurance policy but is a primary policy. The National Union primary policy was entered into on August 30, 2005 and was modified in late November 2005. Abercrombie purchased ERP coverage under the Federal Policy on September 30, 2005. The *Ross* litigation was filed in this Court on September 2, 2005. Both the Federal Policy and the National Union policy contain

10

"Other Insurance" provisions. At this juncture in the action, the Court cannot determine, as a matter of law, which policy is primary and which is excess. The briefing has been quite minimal, as the Court outlined, *supra*. To the extent National Union relies on the "Other Insurance" provision in support of its motion to dismiss the Third Party Complaint, the argument is not well-taken[7].

National Union's third argument in support of its motion to dismiss is that Federal is not entitled to equitable contribution because it is obligated to pay Abercrombie under the Federal policy. National Union argues that Federal cannot seek equitable relief because it allegedly has unclean hands. In particular, National Union argues that Federal "seeks to retain the $820,000 premium that Abercrombie paid for the ERP, while at the same time seeking to shift its burden to National Union as "co-primary insurance," even though National Union falls squarely within the exception to Federal's 'Other Insurance' clause so as to be excess to Federal." (Doc. #40 at 5).

As stated above, the Court cannot conclude, at this juncture, that the "Other Insurance" provision defeats Federal's Third Party claim. If Federal is successful in showing that the National Union policy is not an excess policy of insurance, then the equitable contribution claim may be viable. Concomitantly, if National Union shows that its policy is an excess policy, then Federal may not be entitled to equitable contribution.

In sum, the Court finds that the Third Party Complaint survives National Union's Rule 12(b)(6) motion.

---

[7] The Court notes that National Union cites the case of *Hertz Corp. v. Federal Ins. Co.*, 245 Conn. 374 (1998) as persuasive authority. The Court finds the case distinguishable. The policy at issue in *Hertz* dealt with optional liability insurance for automobile renters. Although the court concluded that the Hertz policy provided excess coverage to a Federal insurance policy, the holding does not control the facts at bar, where Federal alleges that the National Union policy is a primary policy.

11

## IV.

Third Party Defendant's Motion to Dismiss (**Doc. #21**) is **DENIED**. The Motion for Leave to file a Sur-Surreply (**Doc. #49**) is **GRANTED**.

**IT IS SO ORDERED.**

8-16-2007
**DATE**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**