IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ABERCROMBIE & FITCH CO.,
    Plaintiff,

v.

FEDERAL INSURANCE CO.,
    Defendant.

Case No. 2:06-CV-831
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Terence P. Kemp

---

FEDERAL INSURANCE CO.,
    Counterplaintiff/
    Third Party Plaintiff,

v.

ABERCROMBIE & FITCH CO.,
    Counterdefendant,

and

NATIONAL UNION FIRE COMPANY
OF PITTSBURGH, PA.,
    Third Party Defendant.

## OPINION AND ORDER

This matter is before the Court for consideration of Federal Insurance Company's Motion to Dismiss Count VI of the Plaintiff's Amended Complaint. (Doc. #60). For the reasons that follow, the motion is denied.

**I.**

Plaintiff Abercrombie & Fitch Co., ["Abercrombie"], brings this action seeking declaratory judgment and damages in connection with the alleged breach of an insurance contract

providing directors and officers liability coverage. The Defendant is Federal Insurance Company ["Federal"]. The Third-Party Defendant is National Union Fire Insurance Company of Pittsburgh, Pa. ["National Union"]. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

Abercrombie claims that it is entitled to insurance coverage from Federal for certain securities and shareholder derivative actions that are pending in this court[1], as well as for a Securities and Exchange Commission ["SEC"] investigation commenced in November 2005. Federal contends that Abercrombie sought a carrier to replace Federal upon expiration of the 2004 Federal policy. On August 30, 2005, National Union issued a policy to Abercrombie. Federal alleges that Abercrombie and National Union engaged in a scheme to make the National Union policy an excess policy, shifting the entire burden of the *Ross* litigation and similar claims to Federal.

In its Amended Complaint, Abercrombie brings a claim for bad faith in connection with the *Ross* litigation and SEC investigation. Abercrombie alleges that "Federal . . . without reasonable justification, has refused to pay any portion of the 2005 Lawsuits Past Defense Costs and the SEC Investigation Past Defense Costs." (*Am. Compl.* at ¶ 46). As an additional allegation, Abercrombie states:

> By letters dated January 9, 2007 and March 22, 2007, Federal indicated that it will not voluntarily pay any portion of the 2005 Lawsuits Past Defense Costs and the SEC Investigation Past Defense Costs or future defense costs on the entirely improper basis that Abercrombie filed this action against Federal and rejected an illusory interim funding agreement proposed by Federal in August 2006. Abercrombie acted entirely within its right in filing this action against Federal. Federal's retaliatory refusal to pay any defense costs (while at the same time retaining the required additional premium of $820,000 paid by Abercrombie to

---

[1]The lawsuits were commenced on September 2, 2005 and are consolidated under the lead case, *Ross v. Abercrombie & Fitch Co.*, 2:05-CV-819.

2

> purchase the Extended Reporting Period) constitutes bad faith and actual malicious conduct.
>
> As a direct and proximate result of Federal's bad faith conduct, Abercrombie has suffered, and is continuing to suffer, damages, costs, and other losses and has been or will be damaged in an amount to be proven at trial.

(*Id.* at ¶¶ 47-48).

Federal moves to dismiss this Count VI of the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## II.

Rule 12(b)(6) allows the Defendant to raise, by motion, the defense of "failure to state a claim upon which relief can be granted." In considering a motion under the rule, the Court is to construe the complaint in the light most favorable to the Plaintiff, accepting all well-pled factual allegations as true, to determine whether Plaintiff could prove no set of facts that would entitle Plaintiff to relief. *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006). Although a liberal standard, it does require more than bare assertions of legal conclusions. *League of United Latin American Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007), citing *Bovee v. Coopers & Lybrand CPA*, 272 F.3d 356, 361 (6th Cir. 2001). As the Supreme Court recently explained, the Plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true . . . ." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007) (internal citations omitted). "To state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *League of United Latin Amer. Citizens*, 500

3

F.3d at 527, citing *Twombly*, 127 S. Ct. at 1969.

### III.

In support of its Motion to Dismiss, Federal argues that Abercrombie has pleaded no facts to support a theory that Federal's decision to not pay defense costs was done in bad faith. Under Ohio law, a claim for bad faith is available when "an insurer refuses to pay a claim without reasonable justification." *Grange Mut. Cas. Co. v. Rosko*, 146 Ohio App.3d 698, 712 (Ohio App. 2001). In order to prevail on a claim for bad faith, the insured "must prove that the insurer's refusal to pay a claim was totally arbitrary and capricious." *Spremulli's Am. Serv. v. Cincinnati Ins. Co.*, 91 Ohio App.3d 317, 322 (1992).

Federal argues that its refusal to pay defense costs was reasonable. According to Federal, the policy at issue is not a "duty to defend" policy. Further, Federal argues that the policy does not require Federal to advance defense costs on an ongoing basis absent some agreement between the parties. Abercrombie argues that the policy is a "pay on behalf of" or liability policy. According to Abercrombie, the Federal policy requires payment of defense costs as they are incurred.

Section 16 of the Federal Policy outlines Defense and Settlement. The section provides, in relevant part:

> (a) It shall be the duty of the Insureds and not the duty of the Company to defend Claims made against the Insureds.
> \*           \*           \*
> (e) Any advancement of Defense Costs shall be repaid to the Company by the Insureds, severally according to their respective Interests, if and to the extent it is determined that such Defense Costs are not Insured under this coverage section.

4

(Federal Policy, p.14 of 19).

Section 17(c) provides:

(c) If the Insureds and the Company agree on the allocation of Defense Costs, the Company shall advance on a current basis Defense Costs allocated to the covered Loss.  If the Insureds and the Company cannot agree on an allocation:
> (i) no presumption as to allocation shall exist in any arbitration, suit or other proceeding;
> (ii) the Company shall advance on a current basis Defense Costs which the Company believes to be covered under this coverage section until a different allocation is negotiated, arbitrated or judicially determined; and
> (iii) the Company, if requested by the Insureds, shall submit the dispute to binding arbitration.  The rules of the American Arbitration Association shall apply except with respect to the selection of the arbitration panel, which shall consist of one arbitrator selected by the Insureds, one arbitrator selected by the Company, and a third Independent arbitrator selected by the first two arbitrators.

(*Id.*, p. 15 of 19).

Section 19 of the Federal Policy outlines Payment of Loss.  The section provides:

19.  In the event payment of Loss is due under this coverage section but the amount of such Loss in the aggregate exceeds the remaining available Limit of Liability for this coverage section, the Company shall:
(a)  first pay such Loss for which coverage is provided under Insuring Clause 1 of this coverage section; then
(b)  to the extent of any remaining amount of the Limit of Liability available after payment under (a) above, pay such Loss for which coverage is provided under any other Insuring Clause of this coverage section.

Except as otherwise provided in this Subsection 19, the Company may pay covered Loss as it becomes due under this coverage section without regard to the potential for other future payment obligations under this coverage section.

(*Id.*, p.16 of 19).

The Federal policy defines Defense Costs as follows:

**Defense Costs** means that part of Loss consisting of reasonable costs, charges,

5

> fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees or benefits of the directors, officers or employees of the Organization) incurred in defending any Claim and the premium for appeal, attachment or similar bonds.

(*Id.*, p. 5 of 19). The Policy defines Loss in the following way:

> (a) the amount that any Insured Person (for purposes of Insuring Clauses 1 and 2) or the Organization (for purposes of Insuring Clause 3) becomes legally obligated to pay on account of any covered **Claim**, including but not limited to damages (including punitive or exemplary damages, if and to the extent that such punitive or exemplary damages are insurable under the law of the jurisdiction most favorable to the insurability of such damages provided such jurisdiction has a substantial relationship to the relevant insureds, to the Company, or to the Claim giving rise to the damages), judgments, settlements, pre-judgment and post-judgment interest and **Defense Costs** . . . .

(*Id.*, p. 6 of 19).

Federal argues that the policy in this case is like that in *Corabi v. CNA Insurance Companies*, No. C2-87-674, 1988 WL 363612 (S.D. Ohio June 21, 1988) (Graham, J.). In that case, the Plaintiff, officer of a bank, sued an insurance company that provided directors and officers liability coverage. Plaintiff claimed that the insurer's failure to pay defense costs in a separate action for breach of fiduciary duty against Plaintiff, was done in bad faith. In considering the issue, the district court found that the plain language of the policy as a whole indicated that the insurer could, if it chose to do so, advance defense costs to Plaintiff[2]. In light of this provision, the court concluded that the insurer's failure to advance defense costs was not

---

[2]The relevant provision stated:
The Insurer may at its option and upon request, advance on behalf of the Directors or Officers, or any of them, expenses which they have incurred in connection with claims made against them, prior to disposition of such claims, provided always that in the event it is finally established the Insurer has no liability hereunder, such Directors and Officers agree to repay to the Insurer, upon demand, all monies advanced by virtue of this provision.

1988 WL 363612 at *1.

6

done in bad faith. Federal contends that, like the insurer in *Corabi*, it had no duty to advance defense costs. Abercrombie asserts that the Federal policy is not similar to the one in *Corabi* because the Federal policy does not contain an express option to pay clause. According to Abercrombie, Federal must pay for loss, including defense costs, that Abercrombie becomes legally obligated to pay. In this regard, Abercrombie cites the Sixth Circuit's decision in *Combs v. International Ins. Co.*, 354 F.3d 568 (6th Cir. 2004), in which a directors and officers liability policy defined "loss" to include any amount which the insureds were legally obligated to pay.

In this case, "loss" is defined in a similar way. Specifically, "the amount that any Insured Person . . . becomes legally obligated to pay . . . ." (Federal Policy at p. 6 of 19). The definition includes "defense costs." (*Id.*). In turn, "defense costs" is defined as "that part of Loss consisting of reasonable costs, charges, fees . . . and expenses . . . incurred in defending any Claim . . . ." (*Id.* at p. 5 of 19). Section 19 outlines Payment of Loss and provides that the company "may pay covered Loss as it becomes due under this coverage section without regard to the potential for other future payment obligations under this coverage section." (*Id.* at p. 16 of 19). Section 17(c) outlines a procedure for the allocation of defense costs. If the Company and the Insureds agree on the allocation of costs, they are to be advanced on a current basis. If the parties cannot agree, then "the Company shall advance on a current basis Defense Costs which the Company believes to be covered under this coverage section <u>until a different allocation is negotiated, arbitrated or judicially determined.</u>" (*Id.* at p. 15 of 19) (emphasis added). Federal fails to cite the latter part of this sentence. Federal relies on the first portion of the sentence in

7

support of its argument that it has no duty to advance defense costs[3].

In the Court's view, the Federal policy does not express the clear option as to whether to advance defense costs, as was the situation in *Corabi*. While the policy does not contain a duty to defend, Section 17(c) of the policy clearly contemplates the advance payment of defense costs, whether by agreement or by other determination. Based on this policy language, the Court cannot conclude that there are no set of facts upon which Abercrombie can base its claim for bad faith.

Abercrombie's bad faith claim is also premised upon the allegation that Federal refused to pay defense costs in retaliation for Abercrombie's rejection of "an illusory interim funding agreement proposed by Federal in August 2006.[4]" (*Am. Compl.* at ¶ 47). According to Abercrombie, it was not reasonable for Federal to refuse to advance defense costs because Abercrombie rejected Federal's settlement proposal and instead commenced this action.

Federal asserts that this aspect of Abercrombie's bad faith claim fails to state a basis for relief. In particular, Federal argues that the allegation runs contrary to Fed. R. Evid. 408, which outlines uses for compromise and offers to compromise. The rule states:

> **(a) Prohibited uses.** Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount . . .

---

[3]Federal does not, however, submit that defense costs are not covered under the policy. Federal's position is simply that it has no duty to advance payment of costs.

[4]In support of this claim, Abercrombie cites two letters, one dated January 9, 2007 and the other dated March 22, 2007. The January 9 letter states, in part: "[B]ecause Federal's compromise proposal was rejected and because Federal's liability for any defense costs is now in litigation, Federal will not be advancing any defense costs at this time." (Doc. #63-3). In response to invoices sent by Abercrombie, Federal stated in the March 22 letter that the position taken in the January 9 letter would continue "unless and until our litigation circumstances dictate a change in our position." (Doc. #63-4).
The Court references these letters at this juncture for background purposes only.

> (1) furnishing or offering or promising to furnish - or accepting or offering or promising to accept - a valuable consideration in compromising or attempting to compromise the claim; and
> (2) conduct or statements made in compromise negotiations regarding the claim, except when offered in a criminal case. . . .
>
> **(b) Permitted uses.** This rule does not require exclusion if the evidence is offered for purposes not prohibited by subdivision (a). Examples of permissible purposes include proving a witness's bias or prejudice; negating a contention of undue delay . . . .

Fed. R. Evid. 408. According to Federal, to the extent Abercrombie's bad faith claim depends on Federal's offer of compromise, it is a prohibited use under Rule 408.

Abercrombie contends that Rule 408 is not implicated because the letters dated January 9 and March 22, 2007, in which Federal states that it will not advance defense costs because its settlement proposal was rejected, are not themselves settlement communications. Abercrombie also submits that, even if Rule 408 applies, evidence of rejection of the settlement is a permitted use under the Rule to show Federal's motive for refusing to advance defense costs.

The Court concludes that whether Rule 408 applies to Abercrombie's bad faith claim cannot be determined at the pleading stage of this case. At this juncture, the Court must assume that Abercrombie's allegations with respect to Federal's failure to advance defense costs, are true. The possibility that Rule 408 precludes Abercrombie from offering evidence in support of its claim is inappropriate for the Court to consider in the context of a Rule 12(b)(6) motion. Whether this evidence is admissible as relevant, probative and permissible, is a decision that can only be made in a legal and factual context, which cannot be determined from the pleadings standing alone. Thus, Federal's motion to dismiss this aspect of Abercrombie's bad faith claim is denied.

## IV.

Federal Insurance Company's Motion to Dismiss Count VI of the Plaintiff's Amended Complaint (**Doc. #60**) is **DENIED**.

**IT IS SO ORDERED.**

3-11-2008
**DATE**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**

10