IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ABERCROMBIE & FITCH CO.,

        Plaintiff,

    v.

FEDERAL INSURANCE CO.,

        Defendant.

Case No. 2:06-CV-831
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Kemp

---

FEDERAL INSURANCE CO.,

        Counterplaintiff/Third-Party
        Plaintiff,

    v.

ABERCROMBIE & FITCH CO.,

        Counterdefendant,

    and

NATIONAL UNION FIRE COMPANY
OF PITTSBURGH, PA.,

        Third-Party Defendant.

## OPINION AND ORDER

This matter is before the Court for consideration of Defendant Federal Insurance

Company's ("Federal") Motion for Summary Judgment (Doc. #84).  For the reasons that follow,

Federal's Motion is DENIED.[1]

---

[1]Plaintiff's Motion for Leave to File Sur-Reply Brief in Opposition (Doc. #101) is also
pending.  Although the Court finds the Sur-Reply unnecessary to a full consideration of the
issues, the Court has considered all of the materials submitted by all of the parties in connection

**I.**

Plaintiff Abercrombie & Fitch, Inc. ("Abercrombie") brings this claim seeking a declaratory judgment of insurance coverage and damages for breach of the insurance policy issued to Abercrombie by Defendant Federal. Federal asserts a counterclaim for breach of contract, and seeks declaratory judgment "declaring that as a result of Abercrombie's material breach of its obligations under Section 16 of the 2004 Federal Policy, Federal has no obligation under the [Extended Reporting Period] to provide coverage for the Ross Litigation, the SEC Investigation, or any Related Claims." Counterclaim, at ¶53. Defendant/Counterclaimant Federal now moves for summary judgment as a matter of law on Counts One and Two of its Counterclaim and on Abercrombie's Amended Complaint.[2] The Court has jurisdiction under 28 U.S.C. §1332.

**II.**

The material facts giving rise to this insurance coverage dispute are not in question. Federal issued Executive Protection Portfolio Policy No. 8159-6213 (the "Federal Policy") to Abercrombie for the Policy Period of September 1, 2004 to September 1, 2005. The Federal Policy includes an Executive Liability and Entity Securities Liability Coverage Section, which provides up to $10 million of coverage for Abercrombie, its officers and directors, for "loss . . . on account of any Claim first made . . . against [an insured] during the Policy Period or, if exercised, during the Extended Reporting Period, for a Wrongful Act committed, attempted or

_____

with the summary judgment briefing and the motion is therefore GRANTED.

[2]Federal also filed a Third-Party Complaint against National Union for declaratory relief and equitable contribution. Federal has not moved for judgment on those claims, and this Opinion and Order does not address the Third-Party Complaint.

allegedly committed or attempted by [an insured] before or during the Policy Period." As the end

of the Federal Policy Period approached, Abercrombie purchased a new claims-made policy from

National Union Fire Insurance Company of Pittsburgh ("National Union"), with coverage

effective from September 1, 2005 to September 1, 2006.

On September 2, 2005, one day after the expiration of the Federal Policy, Abercrombie

was sued, along with several of its officers and directors, in a class action complaint alleging

violations of federal securities laws. Certain Abercrombie shareholders subsequently filed

several derivative suits, and the Securities and Exchange Commission commenced a formal

investigation on November 30, 2005.

The Federal Policy permitted Abercrombie to purchase a one-year extended reporting

period (the "ERP") that would cover claims arising after the end of the initial Policy Period, but

involving conduct that occurred during the Policy Period. Abercrombie exercised the option to

purchase the ERP and paid the $820,000 premium on September 30, 2005, within the 30-day

window provided by the Federal Policy. Abercrombie formally notified Federal of the Ross

Claims by letter dated October 5, 2005.

There is no dispute that after the Ross claims were filed, and before purchasing the ERP,

Abercrombie renegotiated the National Union Policy, providing that the new coverage would be

excess to Federal's primary coverage under the ERP.[3] The agreement between National Union

and Abercrombie was later memorialized in an Endorsement to the National Union Policy.

Endorsement No. 17 reads as follows:

---

[3] Primary insurance is that which covers the "first level of loss (after satisfaction of any deductible)," while excess insurance is that which is activated when a loss "exceeds the limits of applicable primary insurance." Couch on Insurance, §1.4 (2006).

3

In the event a Claim is made against an Insured under the policy and also under Policy No. 8159-6213 issued by Federal Insurance Company (hereinafter "Federal Policy"), alleging any Wrongful Act committed or allegedly committed prior to 9/01/2005, then such insurance as is provided by this policy shall apply only as excess over any Loss paid under such Federal Policy.

The parties agree that, had Abercrombie purchased the ERP and not written the National Union Policy to be excess, the National Union and Federal policies would both be primary. Federal maintains that, by shifting the burden of primary coverage to Federal, Abercrombie prejudiced Federal's right to recover from National Union, and that such conduct constitutes a material breach of the insurance contract and a bar to coverage. Specifically, Federal claims that Abercrombie breached Section 16(d) of the Policy, which states:

The Insureds agree to provide the Company [Federal] with all information, assistance and cooperation which the Company may reasonably require and agree that in the event of a Claim the Insureds will do nothing that could prejudice the Company's position or its potential or actual rights of recovery.

Abercrombie contends that the Federal Policy expressly permitted Abercrombie to structure additional or subsequent coverage as excess to Federal's primary coverage.

Specifically, the Federal Policy states, in Section 18:

If any Loss under this coverage section is insured under any other valid insurance policy(ies), then this coverage section shall cover such Loss, subject to its limitations, conditions, provisions and other terms, only to the extent that the amount of such Loss is in excess of the applicable retention (or deductible) and limit of liability under such other insurance, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limits of Liability provided in this coverage section [the Executive Liability and Entity Securities Liability Coverage section].

(Federal Policy, Doc. #85-2).

The parties differ over the meaning of this provision. Federal maintains that the

4

provision applies only to coverage that is exclusively excess; Abercrombie contends that this

section gives it the right to purchase primary coverage that would be excess only as to the Federal

ERP.

Importantly, the parties do not disagree on several key facts relating to coverage. For

example, there is no dispute that the Ross Claims fall within the coverage provided by the ERP,

as they allege wrongful conduct occurring during the initial Policy Period. Also, Federal does

not allege that Abercrombie failed to exercise the ERP option in accordance with Section 12 of

the Policy, or to provide timely notice of the Ross Claims under Section 15.

Federal now seeks judgment as a matter of law and a declaration that the Federal Policy

does not provide coverage to Abercrombie for the Ross Claims, based solely on Abercrombie's

conduct in writing the National Union Policy to be excess to that of Federal, allegedly cutting off

Federal's right of contribution in purported breach of Section 16(d) of the Federal Policy.

### III.

Under Civil Rule 56(c), summary judgment should be entered "if the pleadings, the

discovery and disclosure materials on file, and any affidavits show that there is no genuine issue

as to any material fact *and that the movant is entitled to judgment as a matter of law*." Fed. R.

Civ. P. 56(c) (emphasis added). The absence of genuinely disputed facts is not enough to obtain

summary judgment. Rather, the movant must also "demonstrate that the applicable controlling

law requires a decision in the movant's favor. Conversely, to defeat summary judgment, the

nonmovant must articulate a viable legal theory entitling it to relief should it prevail on the facts

at trial." Moore's Federal Practice, Sec. 56.11[8] (3d ed. 2008) (citing *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 245-46 (1986)).

5

## IV.

The parties' dispute is primarily a result of the parties' different interpretations of

Sections 16 and 18 of the Policy.[4]  If Section 18 permits Abercrombie to obtain coverage that is

excess only to that of the Federal Policy (and otherwise primary), then taking such a step cannot

be considered a material breach of Section 16(d).  If Section 16(d) is a standard "cooperation

clause," requiring Abercrombie simply to cooperate with Federal in the defense and settlement of

the Ross Claims, then Abercrombie's conduct in structuring its insurance in the method most

beneficial to its needs does not constitute a breach of the Federal Policy.

### A.      Interpretation of the Federal Policy

The parties agree that Ohio law governs this dispute and applies to the interpretation of

the Federal Policy.  The Ohio Supreme Court stated many years ago that:

> It is too well settled to require supporting authority that, since the insurer prepares
> the policy of insurance, it must be liberally construed in favor of the insured, and,
> likewise, if there is a real ambiguity that ambiguity must be construed in favor of
> the insured.  However, a policy is a written contract, and its terms must be given a
> reasonable construction.  An ambiguity which is created by giving a strained or
> unnatural meaning to phrases or by mere casuistry does not constitute an
> ambiguity at all.

*Yeager v. Pacific Mut. Life Ins. Co.*, 166 Ohio St. 71, 78 (Ohio 1956).

The Ohio Supreme Court has also instructed that, in order to defeat coverage, "the insurer

must establish not merely that the policy is capable of the construction it favors, but rather that

---

[4]Federal devotes a great deal of attention to Abercrombie's motives in structuring its
coverage and to the timing of the Endorsements modifying the National Union Policy.
Abercrombie does not appear to dispute that it purchased the ERP and renegotiated the National
Union Policy in direct response to the Ross Claims.  Federal's only substantive claim is that
Abercrombie breached the Policy; the Court only considers the plain language of the Policy in
determining whether that is the case.  The parties' motives and the timing of each step in the
process are largely undisputed and wholly irrelevant.

such an interpretation is the only one that can fairly be placed on the language in question."

*Andersen v. Highland House Co.*, 93 Ohio St. 3d 547, 549, 757 N.E.2d 329 (2001) (internal

citations omitted) (citing *Lane v. Grange Mut. Cos.*, 45 Ohio St. 3d 63, 65, 543 N.E.2d 488, 490

(1989) ("Where provisions of a contract of insurance are reasonably susceptible of more than one

interpretation, they will be construed strictly against the insurer and liberally in favor of the

insured")).

Interpreting the Federal Policy in favor of the insured, the Court finds that Federal's

positions with regards to Sections 16 and 18 are not the only reasonable interpretations of these

positions. Rather, each Section can be reasonably interpreted in such a manner that requires

Federal to provide coverage for the Ross Claims. *See Westfield Ins. Co. v. Galatis*, 100 Ohio St.

3d 216, 220, 797 N.E.2d 1256 (2003) (*quoting Morfoot v. Stake*, 174 Ohio St. 506, 190 N.E.2d

573, paragraph one of the syllabus (1963) ("Although, as a rule, a policy of insurance that is

reasonably open to different interpretations will be construed most favorably for the insured, that

rule will not be applied so as to provide an unreasonable interpretation of the words of the

policy."))

**B.      Federal Policy, Section 18: "Other Insurance"**

Based on the plain language of the "other insurance clause" in the Federal Policy, Section

18, Federal anticipated that Abercrombie would have or could obtain insurance specifically

excess to Federal's coverage. The Federal Policy provides that Federal's coverage would be

excess to any other coverage "unless such other insurance is written only as specific excess

insurance over the Limits of Liability provided in this coverage section." Federal Policy, at Sec.

18. The Policy does not state that such "other insurance" could not otherwise be primary

coverage.

After the Ross Claims were filed, Abercrombie and National Union amended the National Union Policy "other insurance clause" by executing Endorsement No. 17 which reads, in part, "such insurance as is provided by this policy shall apply only as excess over any Loss paid under [the] Federal Policy."[5] Federal's argument, that the Policy language prohibited Abercrombie from executing this Endorsement making an otherwise primary policy to be excess only as to Federal's ERP coverage, is not supported by the plain language of the Policy. To the extent Section 18 is susceptible of more than one interpretation, the Court construes it in favor of the insured, Abercrombie.

## C.    Federal Policy, Section 16(d): "Defense and Settlement"

Federal's interpretation of Section 16(d) of the Policy is unreasonably broad. Federal would have the Court interpret Section 16(d) to impose affirmative duties on Abercrombie not only to cooperate and assist in the defense and settlement of litigation, but also to maximize Federal's potential rights of contribution as against other insurers. For example, although not the basis of its claim for breach of contract, Federal argues that its rights were impaired by Abercrombie's failure to exercise the ERP of a 2004 excess policy Abercrombie held with National Union. The plain language of the Federal Policy does not require such extraordinary effort (and expense) on the part of its insured. It is an unreasonable interpretation of Section

---

[5] Prior to the amendment of the National Union Policy with Endorsement No. 17, the two policies contained "mutually repugnant" "other insurance" clauses wherein both policies generally provide that its coverage is excess to any other available insurance. Federal maintains that, under such circumstances, the clauses would be disregarded and the insurers become mutually liable for an insured loss. Abercrombie contends that the "other insurance" clauses created a risk of finger pointing between insurers, with each asserting that the other's coverage should be primary.

16(d) to find that it requires Abercrombie to structure its insurance needs based not on its own needs and in its own best interests, but rather to minimize its insurer's potential exposure.

The Court finds that Section 16(d) is limited by its context within the Federal Policy.  The provision is the fourth part of a section dealing solely with the duty of the Insured in connection with the defense and settlement of a Claim, the selection of defense counsel, and the payment of defense costs.  Meanwhile, the Terms and Conditions in the Federal Policy separately govern Federal's rights to recover "in the event of payment under this policy."  (Federal Policy, Doc. #85-2, Sec. 7, "Subrogation").  The Courts finds that Section 16(d) can reasonably be interpreted to require the cooperation of Abercrombie in connection with the defense of a Claim, and no more.  *See Storer v. Ocean Acci. & Guarantee Corp.*, 80 F.2d 470, 472 (6th Cir. 1935) (Purposes of a cooperation clause are: "(1) To require the insured to aid in preparing the case for trial and in making proper defense; and (2) to prevent collusion between the insured and a friendly claimant."); *Weller v. Erie Ins. Co.*, 125 Ohio App. 3d 270, 275-76, 708 N.E.2d 271, 274 (Montgomery App. 1998).

In *Weller*, the Ohio Court of Appeals examined the issue of when the breach of a cooperation clause relieves an insurer of its coverage obligations.  The insured's lack of cooperation was undisputed in *Weller*; at issue was whether Erie, the insurer, could establish the element of prejudice as a matter of law.

> Whether the insured breached the cooperation clause is generally determined "in view of the facts and circumstances in each case"; however, the issue may be determined by the court as a matter of law "when a case presents undisputed facts." *Gabor v. State Farm Mut. Auto. Ins. Co.* (1990), 66 Ohio App. 3d 141, 144, 583 N.E.2d 1041.  Courts of other states have similarly held that prejudice resulting from an insured's failure to cooperate is an issue of fact. *Anderson v. Kemper* (1983), 128 Mich. App. 249, 253, 340 N.W.2d 87, 90; *Ramos v.*

9

*Northwestern Mut. Ins. Co.* (Fla.1976), 336 So. 2d 71, 75.

> Prejudice has been described as involving material injury to the insurer's ability to contest the merits of the case, *Anderson*, 128 Mich. App. at 253-254, 340 N.W.2d at 90, or serious impairment in investigating the claim or defending the merits of the case. *King v. Federal Ins. Co.* (D.Kan.1992), 788 F. Supp. 506, 506, affirmed (1993), 996 F.2d 311; *Darcy v. Hartford Ins. Co.* (1990), 407 Mass. 481, 490, 554 N.E.2d 28, 34. *Cf. Boone v. Lowry* (1983), 8 Kan. App. 2d 293, 302, 657 P.2d 64, 72 (requiring the insurer to show "at the very least that if the cooperation clause had not been breached there was a substantial likelihood that the trier of fact, in an action against the insured, would have found in the insured's favor.")

*Weller*, 125 Ohio App. 3d at 276.

Federal does not allege that Abercrombie has prejudiced its ability to defend the Ross Claims on the merits, and therefore it has not established a breach of the cooperation clause as a matter of Ohio law.

Further, the Court does not interpret Section 16(d) as applying to Federal's potential rights of contribution against a subsequent insurer. As set out above, the plain language of the Federal Policy does not permit Federal's vast interpretation. Contrary to Federal's argument, the Policy does not prevent Abercrombie from taking "any action" as to "any party" that might be detrimental to Federal.[6]

Federal has not demonstrated that "applicable controlling law requires a decision in [its] favor" and is not entitled to summary judgment on Counts One through Five of Plaintiff's Amended Complaint, or on Counts One and Two of its Counterclaim.

## C.   Bad Faith

Regarding Abercrombie's claim for bad faith in connection with Federal's refusal to pay

---

[6] Presumably for this reason, Federal has not argued that Abercrombie's failure to exercise the ERP option on any other excess policy for the 2004-2005 period constitutes a breach of the Federal Policy.

defense costs date, this Court has already found that "the Federal policy does not express the clear option as to whether to advance defense costs . . . While the policy does not contain a duty to defend, Section 17(c) of the policy clearly contemplates the advance payment of defense costs, whether by agreement or by other determination." *See* March 11, 2008 Opinion and Order denying Federal's Motion to Dismiss Count VI of Plaintiff's Amended Complaint (Doc. #87). Federal contends that, at the very least, its decision not to advance defense costs to Abercrombie was "reasonably justified" such that Abercrombie cannot maintain its claim of bad faith. *See Romstadt v. Allstate Ins. Co.*, 59 F.3d 608, 611 (6th Cir. 1995) ("[U]nder Ohio law, the proper standard to be used to decide whether an insurer has breached its duty to its insured to act in good faith is the 'reasonable justification' standard.")

The Court looks no further than the briefing on Abercrombie's Motion for Partial Summary Judgment[7] (Doc. ##108, 114, 117) to find the material issues of fact preventing summary judgment on Abercrombie's bad faith claim. The parties dispute, for example, whether all or part of the SEC Investigation is a covered Claim. This material fact, among others, precludes a summary determination on whether Federal's refusal to advance defense costs is reasonably justified as a matter of law. Construing the facts in favor of Abercrombie, the record does not support summary judgment dismissing Abercrombie's claim for bad faith.

---

[7]Abercrombie's Motion for Partial Summary Judgment is under advisement and will be decided by a separate Opinion and Order.

11

**V.**

For the foregoing reasons, Defendant Federal Insurance Company's Motion for Summary

Judgment (Doc. #84) is **DENIED**.


**IT IS SO ORDERED**.

9-29-2008

**DATE**                                        **EDMUND A. SARGUS, JR.**
                                                **UNITED STATES DISTRICT JUDGE**

12