IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ABERCROMBIE & FITCH CO.,

    Plaintiff,

v.

FEDERAL INSURANCE CO.,

    Defendant.

Case No. 2:06-CV-831
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Kemp

---

FEDERAL INSURANCE CO.,

    Counterplaintiff/Third-Party Plaintiff,

v.

ABERCROMBIE & FITCH CO.,

    Counterdefendant,

and

NATIONAL UNION FIRE COMPANY
OF PITTSBURGH, PA.,

    Third-Party Defendant.

## OPINION AND ORDER

This matter is before the Court for consideration of Plaintiff Abercrombie & Fitch Co.'s Motion for Partial Summary Judgment. (Doc. 108). For the reasons that follow, Abercrombie's Motion is **GRANTED**.

1

# I.

Plaintiff Abercrombie & Fitch, Inc. ("Abercrombie") brings this claim seeking a declaratory judgment of insurance coverage and damages for breach of the insurance policy issued to Abercrombie by Defendant Federal. Federal has asserted counterclaims and a third-party complaint against National Union Fire Company. Plaintiff moves for partial summary judgment as a matter of law on Count One of its Amended Complaint, and seeks a declaration that Abercrombie is entitled to the advancement of certain defense costs from Federal. The Court has jurisdiction under 28 U.S.C. §1332.

# II.

The material facts giving rise to this insurance coverage dispute are not in question, and have been set out by the Court in its Opinions denying Federal's Motion to Dismiss (Doc. 87) and denying Federal's Motion for Summary Judgment (Doc. 120).

In denying Federal's Motion for Summary Judgment, the Court held that the Federal Executive Protection Portfolio Policy No. 8159-6213 (the "Federal Policy") is primary coverage for Claims made between September 1, 2005 and September 1, 2006, arising out of conduct that happened during the Policy Period of September 1, 2004 to September 1, 2005. Specifically, the Policy contains $10 million of coverage for Abercrombie, its officers and directors, for "loss . . . on account of any Claim first made . . . against [an insured] during the Policy Period or, if exercised, during the Extended Reporting Period, for a Wrongful Act committed, attempted or allegedly committed or attempted by [an insured] before or during the Policy Period."

On September 2, 2005, one day after the expiration of the Federal Policy, Abercrombie was sued, along with several of its officers and directors, in a class action complaint alleging

2

violations of federal securities laws. Certain Abercrombie shareholders subsequently filed several derivative suits, and the Securities and Exchange Commission commenced a formal investigation on November 30, 2005.

The Federal Policy permitted Abercrombie to purchase a one-year extended reporting period (the "ERP") that would cover Claims arising after the end of the initial Policy Period, but involving conduct that occurred during the Policy Period. Abercrombie exercised the option to purchase the ERP and paid the $820,000 premium on September 30, 2005, within the 30-day window provided by the Federal Policy. Abercrombie formally notified Federal of the Claims by letter dated October 5, 2005.

### III.

The parties' current dispute involves the interpretation of the Insuring Clauses of the Federal Policy, under which Abercrombie seeks payment of its defense costs as they are incurred. Abercrombie states that, up to March, 2008, it had incurred $6 million in defense costs related to the derivative suits, the class action, and the SEC investigation, well in excess of the $1 million retention or deductible. Abercrombie also maintains that it regularly submitted invoices for such costs to Federal for payment, and that Federal has not paid any of Abercrombie's defense costs to date. Federal does not dispute these facts, but continues to contend that it has no duty to advance defense costs.

After denying Federal's Motion for Summary Judgment, the Court directed the parties to file a memorandum stating whether any issues remained for resolution on Abercrombie's motion for partial summary judgment. Specifically, the Order noted that:

In briefing Abercrombie's Motion for Partial Summary Judgment, Federal stated

>that if the Court denied its motion, "Federal will pay the defenses *(sic)* costs associated with the Ross Litigation consistent with the terms and conditions of the Federal Policy." (Doc. 114 at 3). The Court previously ruled, in its Opinion and Order dated March 11, 2008 (doc. 87) that Federal's policy "clearly contemplates the advance payment of defense costs."

(Dec. 2, 2008 Order, doc. 126).

In response, Federal states that it "believes that coverage is barred in its entirety as a result of Abercrombie's breach of Policy Section 16(d)." The Policy states that Federal is obligated to advance defense costs that it "believes to be covered. . . until a different allocation is judicially determined." (*See* Federal Policy pp 3-4, Doc. 109, Cupps Dec. at Ex. 1.). This Court has, in fact, "judicially determined" that Abercrombie did not breach Section 16(d) by structuring its coverage such that the National Union Policy would be excess to Federal's Policy. Abercrombie's alleged breach was the only coverage dispute raised by Federal. Because there is no longer any basis for Federal's "belief" that the defense costs are not covered, and because the Court has determined that coverage exists, Section 17(c) of the Policy requires the advancement of Abercrombie's defense costs. (*See id.*)

## IV.

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment (Doc. 108) is **GRANTED**. Subject to the $1 million retention and the $10 million limit in Federal Policy No. 8159-62-13, Federal is hereby **ORDERED** to advance payment for the following categories of costs that Plaintiff has incurred and will incur in the future: 1) All reasonable costs incurred by Abercrombie or its current or former officers or directors to defend *Ross v. Abercrombie*, No. 2:05-cv-819 (S.D. Ohio); 2) All reasonable costs incurred by Abercrombie or its current or former officers or directors to defend *In re Abercrombie & Fitch Co. Derivative Litigation*, Lead

4

Case No. 2:05-cv-819 (S.D. Ohio); and 3) All reasonable costs incurred by Abercrombie to investigate or evaluate whether it is in Abercrombie's best interest to prosecute the claims raised in the shareholder derivative suits, up to the Policy's $250,000 limit (*see* Federal Policy, pp. 1 and 12); 4) All reasonable costs incurred by Abercrombie in connection with the Order Directing Private Investigation and Designating Officers to Take Testimony, SEC File No. P-1305, after November 30, 2005, the date of the Order, to the extent such costs were incurred with respect to a Claim, as defined by the Federal Policy. (*See* Pl.'s Reply Mem., Doc. 117, at fn 1).

**IT IS SO ORDERED.**

1-20-2009
**DATE**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**

5