IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ABERCROMBIE & FITCH CO.,

        Plaintiff,

    v.                                    Case No. 2:06-CV-831
                                         JUDGE EDMUND A. SARGUS, JR.
                                         Magistrate Judge Kemp
FEDERAL INSURANCE CO.,

        Defendant.

_____

FEDERAL INSURANCE CO.,

        Counterplaintiff/Third-Party
        Plaintiff,

    v.

ABERCROMBIE & FITCH CO.,

        Counterdefendant,

   and

NATIONAL UNION FIRE COMPANY
OF PITTSBURGH, PA.,
Third-Party Defendant.

## OPINION AND ORDER

This matter is before the Court on the Motion for Summary Judgment filed by Defendant

Federal Insurance Company ("Federal") (Doc. 157).  For the reasons that follow, Federal's

motion is **DENIED in part and GRANTED in part**.

### I. Background

Plaintiff, Abercrombie & Fitch, Inc. ("Abercrombie"), initiated this action against Federal

for claims arising out of a disputed insurance policy between the parties.  In its Amended

Complaint, Abercrombie asserts six claims.  Count I seeks a declaratory judgment for defense

costs, subject to the limits of the insurance policy at issue, incurred in connection with certain

securities class action lawsuits brought against Abercrombie in 2005 ("the 2005 Lawsuits").

Count II asserts a claim for breach of contract for failure to pay defense costs incurred in

connection with the 2005 Lawsuits.  Count III seeks a declaratory judgment for indemnity on any

amounts paid by Abercrombie with respect to a settlement or adverse judgment in connection

with "the 2005 Lawsuits", subject to the limits of the insurance policy at issue.  Count IV seeks a

declaratory judgment for defense costs incurred by Abercrombie in connection with an

investigation initiated by the Securities and Exchange Commission against Abercrombie on or

about November 30, 2005 ("the SEC Investigation"), subject to the limits of the policy at issue.

Count V asserts a breach of contract claim for failure to pay defense costs incurred in connection

with the SEC Investigation.  Finally, Count VI asserts a claim for bad faith for failure to pay any

portion of the defense costs associated with the 2005 Lawsuits and the SEC Investigation.

The Court has set forth in a previous Opinion and Order the material facts giving rise to

this dispute.  (See Doc. 120).  In relevant part, they are as follows:

> Federal issued Executive Protection Portfolio Policy No. 8159-6213 (the "Federal
> Policy") to Abercrombie for the Policy Period of September 1, 2004 to September
> 1, 2005. The Federal Policy includes an Executive Liability and Entity Securities
> Liability Coverage Section, which provides up to $10 million of coverage for
> Abercrombie, its officers and directors, for "loss ... on account of any Claim first
> made ... against [an insured] during the Policy Period or, if exercised, during the
> Extended Reporting Period, for a Wrongful Act committed, attempted or
> allegedly committed or attempted by [an insured] before or during the Policy
> Period." As the end of the Federal Policy Period approached, Abercrombie
> purchased a new claims-made policy from National Union Fire Insurance
> Company of Pittsburgh ("National Union"), with coverage effective from
> September 1, 2005 to September 1, 2006.
>
> On September 2, 2005, one day after the expiration of the Federal Policy,
> Abercrombie was sued, along with several of its officers and directors, in a class
> action complaint alleging violations of federal securities laws. Certain

2

Abercrombie shareholders subsequently filed several derivative suits, and the Securities and Exchange Commission commenced a formal investigation on November 30, 2005.

The Federal Policy permitted Abercrombie to purchase a one-year extended reporting period (the "ERP") that would cover claims arising after the end of the initial Policy Period, but involving conduct that occurred during the Policy Period. Abercrombie exercised the option to purchase the ERP and paid the $820,000 premium on September 30, 2005, within the 30-day window provided by the Federal Policy. Abercrombie formally notified Federal of the [2005 Lawsuits] by letter dated October 5, 2005.

There is no dispute that after the [2005 Lawsuits] were filed, and before purchasing the ERP, Abercrombie renegotiated the National Union Policy, providing that the new coverage would be excess to Federal's primary coverage under the ERP. The agreement between National Union and Abercrombie was later memorialized in an Endorsement to the National Union Policy. Endorsement No. 17 reads as follows:

> In the event a Claim is made against an Insured under the policy and also under Policy No. 8159-6213 issued by Federal Insurance Company (hereinafter "Federal Policy"), alleging any Wrongful Act committed or allegedly committed prior to 9/01/2005, then such insurance as is provided by this policy shall apply only as excess over any Loss paid under such Federal Policy.

The parties agree that, had Abercrombie purchased the ERP and not written the National Union Policy to be excess, the National Union and Federal policies would both be primary. . . .

. . .

Importantly, the parties do not disagree on several key facts relating to coverage. For example, there is no dispute that the [2005 Lawsuits] fall within the coverage provided by the ERP, as they allege wrongful conduct occurring during the initial Policy Period. . . .

Opinion and Order Denying Federal's Motion for Summary Judgment, 2-5 (footnotes omitted)

(Doc. 120 (quoting Federal Policy, Doc. 85-2)).

Relevant to the disposition of the motion at bar is the following procedural history. On February 22, 2008, Federal filed a motion for summary judgment on all claims against it. (Doc. 84.) In that motion, Federal contended, as it has consistently throughout this litigation, that

Abercrombie's agreement with National Union constituted a material breach of the Federal

Policy, thereby barring coverage.  Specifically, Federal claimed that Abercrombie violated

Section 16(d), which provides:

> The Insureds agree to provide the Company [Federal] with all information,
> assistance and cooperation which the Company may reasonably require and agree
> that in the event of a Claim the Insureds will do nothing that could prejudice the
> Company's position or its potential or actual rights of recovery.

(Federal Policy, Doc. # 85-2).    In an Opinion and Order dated September 29, 2008 (Doc.

120), the Court rejected Federal's position and denied the motion for summary judgment.

In the meantime, Abercrombie filed a motion for partial summary judgment seeking an

order directing Federal to advance defense costs for the 2005 Lawsuits and the SEC

Investigation.  (Doc. 108).  The Court granted that motion in an Opinion and Order dated

January 21, 2009.  (Doc. 129).

Federal appealed both decisions.  Federal did not seek a stay of the Court's order

directing Federal to advance Abercrombie's defense costs.  Instead, Federal began paying those

costs during the pendency of the appeal.  The parties agree that Federal has now paid out the full

policy amount.

On March 12, 2010, the United States Court of Appeals for the Sixth Circuit affirmed this

Court's decisions to deny Federal's Motion for Summary Judgment and to grant Abercrombie's

Partial Motion for Summary Judgment.  Thereafter, Federal filed the motion for summary

judgment presently under consideration.

## II. Standard of Review

Federal has moved for summary judgment under Federal Rule of Civil Procedure 56.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

4

56(a). "In considering a motion for summary judgment, the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Revis v. Meldrum*, 489 F.3d 273, 279 (6th Cir. 2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Id.*, at 279–80 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

### III. Discussion

In the motion at bar, Federal seeks judgment in its favor on all claims. Federal contends that Abercrombie's declaratory judgment counts are moot because Federal has tendered to Abercrombie the maximum amount that Federal could be required to pay under the Federal Policy. Federal also argues that, for the same reason, Abercrombie's breach-of-contract claims are no longer viable. Finally, Federal argues that it is entitled to judgment on Abercrombie's bad faith claim for two reasons. First, Federal claims that two relevant judicial opinions demonstrate that Federal's denial of coverage based upon Federal's interpretation of the insurance policy was reasonable as a matter of law. Second, Federal claims that Abercrombie cannot demonstrate any damages flowing from the alleged bad faith that are independent from the contract damages.

### A. Declaratory Judgment and Breach of Contract Claims

Federal believes that its payment of the full amount available to Abercrombie pursuant to the limits of the Federal Policy renders moot Abercrombie's declaratory judgment claims— Counts I, III, and IV—and Abercrombie's breach of contract claims—Counts II and V. Abercrombie concedes that these claims are moot to the extent that they seek payment of the defense costs to which it is entitled under the Federal Policy. Abercrombie contends, however,

5

that its Amended Complaint also seeks prejudgment interest and costs.  In Abercrombie's view,
this requested relief defeats Federal's mootness argument.  Insofar as Abercrombie's breach of
contract claims are concerned, the Court agrees.

Counts II and V of Abercrombie's Amended Complaint state causes of action for breach
of contract for Federal's refusal to pay defense costs associated with the 2005 Lawsuits and the
SEC Investigation.  Under Ohio law, a plaintiff must prove the following elements by a
preponderance of the evidence to prevail on a breach of contract claim: "the existence of a
contract, performance by the plaintiff, breach by the defendant, and damage or loss to the
plaintiff."  *Savedoff v. Access Group, Inc.*, 524 F.3d 754, 762.

Federal argues that Abercrombie cannot prevail on its breach claims in light of the full
payment it has received under the Federal Policy because Abercrombie cannot show damages
resulting from Federal's alleged breach.  According to Federal, Abercrombie's claims for
prejudgment interest cannot save the breach of contract causes of action because under Ohio law,
the determination of an award of prejudgment interest constitutes an completely separate and
distinct inquiry from the determination of the plaintiff's suffered damages.  *See Ross v. St.
Elizabeth Health Ctr.*, 910 N.E.2d 1047, 1055 (Ohio Ct. App. 2009) (holding that determination
of prejudgment interest by court, as opposed to jury, does not violate fundamental constitutional
right to trial by jury because determining the amount of prejudgment interest is a question of
law).  Ohio law is clear, however, that prejudgment interest "is part of compensation for
damages" in that [i]t makes the plaintiff insureds whole for the lost use of their due and payable
money during the time required to secure ultimate judgment."  *Lincoln Elec. Co.v. St. Paul Fire
and Marine Ins. Co.*, 210 F.3d 672, 692 (6th Cir. 2000).  Indeed, the Supreme Court of Ohio has

explained the policy underlying both the common-law right and the statutory right to
prejudgment interest in Ohio as follows:

> An award of prejudgment interest encourages prompt settlement and
> discourages defendants from opposing and prolonging, between injury and
> judgment, legitimate claims. Further, prejudgment interest does not punish the
> party responsible for the underlying damages, . . . but, rather, it acts as
> compensation and serves ultimately to make the aggrieved party whole.

*Royal Electric Constr. Corp. v. Ohio State Univ.*, 652 N.E.2d 687, 692 (Ohio 1995) (citing

*Moscovitz v. Mt. Sinai Med. Ctr.*, 635 N.E.2d 331, 346-47 (Ohio 1994)).

Here, in seeking prejudgment interest, Abercrombie has alleged damages beyond the

previously outstanding amount it claimed was due under the Federal Policy. Accordingly, the

Court concludes that Abercrombie's breach of contract claims remain viable.

The claims Abercrombie has brought pursuant to the Declaratory Judgment Act are

another matter, however. Under the Declaratory Judgment Act, a federal court "may declare the

rights and other legal relations of any interested party seeking such declaration" where the party

requesting declaratory relief presents "a case of actual controversy." 28 U.S.C. § 2201(a). As

the United States Supreme Court explained in *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312

U.S. 270, 272 (1941), unless an actual controversy exists, a district court lacks power to grant

declaratory relief. "In declaratory judgment actions it is often difficult to draw a line between

actual controversies and attempts to obtain advisory opinions on the basis of hypothetical

controversies." *Kardules v. City of Columbus*, 95 F.3d 1335, 1344-45 (6th Cir. 1996). To

determine whether a case presents an actual controversy, a court must ascertain "whether the

facts alleged, under all the circumstances, show that there is a substantial controversy, between

parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance

7

of a declaratory judgment." *Maryland Cas.*, 312 U.S. at 273 (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-42 (1937)).

      In this action, Abercrombie seeks a declaratory judgment regarding its rights under the Federal Policy for defense costs and indemnification relating to the 2005 Lawsuits and the SEC Investigation and regarding its entitlement to pre- and postjudgment interest and attorneys' costs and fees. Specifically, Abercrombie's Amended Complaint seeks an order declaring that Federal is obligated by the terms of the Federal Policy to pay past and future defense costs for the 2005 Lawsuit and SEC Investigation, "subject only to the limits and retention" of the Federal Policy; enjoining Federal from failing and refusing to pay Abercrombie any portion of the defense costs for the 2005 Lawsuits and SEC Investigation; granting specific performance of the Federal Policy with respect to the past and future defense costs for the 2005 Lawsuits and the SEC Investigation; and declaring the rights and obligations of the parties under the Federal Policy with respect to the past and future defense costs arising from the 2005 Lawsuits and the SEC Investigation. In addition, Abercrombie seeks an order declaring that Federal is obligated under the Federal Policy to indemnify Abercrombie in full, subject only to the limits of the Federal Policy, on any settlement or judgment paid by Abercrombie in connection with the 2005 Lawsuits; enjoining Federal from failing and refusing to indemnify Abercrombie with respect to any such settlements or judgment; granting Abercrombie specific performance of the Federal Policy; and declaring the rights and obligations of the parties with respect to such settlements or judgments. Finally, on each of its declaratory judgment claims, Abercrombie seeks monetary damages, together with pre-judgment and post-judgment interest; costs of suit; and attorneys' fees.

In light of Abercrombie's concession that Federal has tendered the full amount of the Federal Policy limits, the declaratory judgment claims seeking injunctive relief, specific performance, and declarations that Abercrombie is entitled to indemnity and defense costs no longer present an actual controversy. Thus, the remaining relief sought under those claims, in effect, seeks declarations relating to Federal's liability for interest payments and costs in excess of the liability limits under the Federal Policy. Without an actual controversy concerning the payment of defense costs and indemnity, however, such liability is properly considered under Abercrombie's breach of contract claims. Accordingly, Counts I, III, and IV are dismissed.

### B. Bad Faith Claims

Count VI of Abercrombie's Amended Complaint asserts a bad faith claim against Federal. Specifically, Abercrombie alleges that, after the initiation of this lawsuit, Federal indicated that because the current litigation was pending, it would continue to refuse to pay any portion of the defense costs associated with the 2005 Lawsuits and the SEC Investigation. Abercrombie contends that this position constitutes bad faith retaliation and, therefore, Federal lacks reasonable justification for refusal to pay.

Bad faith conduct by an insurer gives rise to a cause of action in tort. *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, Syl. ¶ 1, 452 N.E.2d 1315 (Ohio 1983). The Supreme Court of Ohio has held that an insurance company does not act in bad faith when it refuses to honor an insurance policy as long as the company has a reasonable justification for refusing to honor a claim. *Zoppo v. Homestead Ins. Co.*, 644 N.E.2d 397, 399-400 (Ohio 1994). "To grant a motion for summary judgment brought by an insurer on the issue of whether it lacked good faith, a court must find, after viewing the evidence in a light most favorable to the insured, that the claim was fairly debatable and the refusal was premised on either the status of the law at the time of the

9

denial or the facts that gave rise to the claim." *Keyser v. UNUM Life Ins. Co. of America*, No. C2-03-138, 2005 WL 2230203, 8-9 (S.D. Ohio 2005) (citing *Tokles & Son. Inc. v. Midwestern Indem. Co.,* 65 Ohio St.3d 621, 630-31, 605 N.E.2d 936 (Ohio 1992) (overruled in part on other grounds by *Zoppo,* 644 N.E.2d 397)). "To withstand a motion for summary judgment on a bad faith claim, an insured must present evidence which tends to show that the insurer had no reasonable justification for refusing the claim." *Id.*

In its motion for summary judgment, Federal argues that Abercrombie cannot prevail on its bad-faith claims in light of two judicial opinions that, Federal says, demonstrate that Federal's refusal to pay defense costs, both before and after Abercrombie filed suit, was reasonable as a matter of law. In particular, Federal points to the dissenting opinion in the Sixth Circuit's decision upholding this Court's conclusion in denying Federal's first Motion for Summary Judgment that Abercrombie did not breach Section 16(d) of the insurance policy. *See Abercrombie & Fitch Co. v. Federal Ins. Co.*, 370 F. App'x 563, 572-76 (6th Cir. 2010) (unpublished opinion). The dissent reached the opposite conclusion. In Federal's view, the dissent's conclusion that Abercrombie breached Section (d) demonstrates that Federal's refusal to pay on Abercrombie's insurances claims had reasonable justification as a matter of law. Federal also directs this Court's attention to *Pennsylvania Gen. Ins. Co. v. Park-Ohio Indus.*, 930 N.E.2d 800 (Ohio 2010), a case decided by the Supreme Court of Ohio shortly after Federal filed the motion at bar.

Abercrombie contends that the judicial opinions cited by Federal fail to establish reasonable justification for Federal's refusal to perform its obligations under the Federal Policy. In Abercrombie's view, the issuance of both decisions after Federal had already made its decision to deny coverage of Abercrombie's claims cannot serve as the basis for this Court to

10

find that reasonable justification existed as a matter of law at the time of Federal's denial. In addition, Abercrombie believes that a dissenting opinion cannot establish reasonable justification as a matter of law. Finally, Abercrombie argues that the Supreme Court of Ohio's decision in *Park-Ohio*, 930 N.E.2d 800, is inapposite to the facts of this case.

The Court takes a different view from that of either of the parties. The dispositive issue in this case is not whether the judicial opinions Federal cites create a reasonable interpretation of status of the *law* in refusing to issue payments under the Federal Policy based upon Federal's belief that Abercrombie had violated Section 16(d). Certainly, the status of Ohio law was and is clear regarding the performance obligations of an insurer when the insured has materially breached the contract: If the performance of a contract term is essential to the purpose of the agreement, a breach of that term discharges the obligations of the non-breaching party. *Software Clearing House, Inc. v. Intrak, Inc.*, 583 N.E.2d 1056, 1060 (Ohio Ct. App. 1990). In insurance contracts, Ohio law recognized then—and continues to do so now—that an insurer is relieved of its obligations to perform under an insurance agreement if the insured has materially breached the agreement and the insurer was prejudiced by the breach. *See, e.g., Ferrando v. Auto-Owners Mut. Ins. Co.*, 781 N.E.2d 927, 929 (Ohio 2002); *Novak v. State Farm Ins. Cos.*, No. 09CA0029-M (Dec. 31, 2009 Ohio Ct. App.).

Throughout this litigation, Federal has steadfastly maintained that it was not obligated to pay Abercrombie's defense costs for the 2005 Lawsuits and SEC Investigation or to indemnify Abercrombie in connection with settlements or judgments arising out of the 2005 Lawsuits because Federal interpreted Section (d) of the insurance contract as barring the kind of agreement into which Abercrombie entered with National Union. By entering into that agreement with National Union, Abercrombie—in Federal's view—materially breached the Federal Policy,

11

thereby relieving Federal of its obligations to perform. For purposes of the bad-faith claim at issue in this action, the question, then, is whether that belief was a reasonable interpretation of the Federal Policy. *See Hoskins v. Aetna Life Ins. Co.,* 452 N.E.2d 1315, 1315 (Ohio 1983) (insurer lacks reasonable justification for denying a claim when its refusal to pay is predicated on *an arbitrary or capricious belief* that the insured is not entitled to coverage) (emphasis added)). If its interpretation was a reasonable one, then Federal had reasonable justification for refusing to honor its obligations under the contract, even if ultimately Federal's position was determined to be incorrect. *See Thomas v. Allstate Ins. Co.*, 974 F.2d 706, 711 (6th Cir.1992) ("The test . . . is not whether the defendant's conclusion to deny benefits was *correct*, but whether the decision to deny benefits was arbitrary or capricious, and there existed a reasonable justification for the denial.").

In light of the dissenting opinion issued on the appeal of this Court's determination that Abercrombie did not breach Section 16(d), Federal was not alone in the belief that it was discharged from performing its obligations under the contract once it learned that Abercrombie had entered into the National Union agreement. A learned judicial opinion that aligns completely with Federal's interpretation of Section 16(d) demonstrates that Federal's decision was not arbitrary or capricious and was supported by reasonable justification. Because the Court finds reasonable justification on the basis of the dissenting opinion in *Abercrombie & Fitch Co. v. Federal Ins. Co.*, 370 F. App'x 563, 572-76 (6th Cir. 2010), Federal's additional citation to *Park-Ohio*, 930 N.E.2d 800, need not and will not be addressed.

Further, while this Court stands by its earlier decision that rejected Federal's interpretation of the policy, it does not follow that Federal's interpretation was unreasonable.

12

Even independently of the dissent in the direct appeal, this Court is of the view that a reasonable person could have taken Federal's position as to the interpretation of the contract.

To the extent that Abercrombie bases its bad-faith claim upon Federal's continued refusal to pay defense costs under the contract after this case was initiated, Abercrombie's arguments are not well taken. Abercrombie alleges that, "[b]y letters dated January 9, 2007 and March 22, 2007, Federal indicated that it will not voluntarily pay any portion of the 2005 Lawsuits Past Defense Costs and the SEC Investigation Past Defense Costs or future defense costs on the entirely improper basis that Abercrombie filed this action against Federal and rejected an illusory interim funding agreement proposed by Federal in August 2006." Compl. ¶ 47. According to Abercrombie, this refusal constitutes "[r]etaliation against Abercrombie for filing suit to enforce Federal's promise to pay. . . ." Abercrombie's Mem. In Opp. To Federal's Second Mot. for Summ J., at 8. However, Federal's refusal to pay Abercrombie the sums owed under the contract is the very conduct giving rise to this action. Abercrombie has not alleged that Federal's initial refusal to perform its obligations under the contract was based upon anything other than the belief (ultimately determined to be incorrect) that Abercrombie had breached Section 16(d) and that Federal was therefore legally entitled to refuse all payments under the contract. Having determined, above, that Federal's position had reasonable justification, the Court concludes that Federal's ongoing assertion of that position throughout this litigation does not give rise to a claim for bad faith.

Based upon the foregoing, the Court finds that Federal is entitled to judgment on Abercrombie's bad-faith claims. Accordingly, Count VI is dismissed.

13

## IV.  Conclusion

For the reasons discussed above, the Court **GRANTS in part and DENIES in part**

Defendant Federal Insurance Company's Motion for Summary Judgment (Doc. 157), and

**DISMISSES** Counts I, III, IV, and VI.

**IT IS SO ORDERED.**


$\underline{\text{3-30-2011}}$

**DATED**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**

14